## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **JACQUELINE W. FERGUSON** | * | Civil Action No.: |
| 11 Trotters Ridge Court | * | |
| Catonsville, Maryland 21228 | * | |
| *Resident of Baltimore County* | * | Jury Trial Requested |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| **INTERACTIVE HEALTH** | * | |
| **SOLUTIONS, INC.** | * | |
| 1700 East Golf Road | * | |
| Suite 900 | * | |
| Schaumburg, Illinois 60173 | * | |
| | * | |
| Serve: The Corporation Trust Inc. | * | |
| 351 West Camden Street | * | |
| Baltimore, Maryland 21201 | * | |
| | * | |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### COMPLAINT FOR WAGES OWED

JACQUELINE W. FERGUSON, Plaintiff, by and through her undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submits her Complaint against INTERACTIVE HEALTH SOLUTIONS, INC., Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401, *et seq*. (hereinafter, "MWHL"); and unpaid wages, treble damages, interest, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Maryland Code Annotated, Labor and Employment Article §§ 3-501, *et seq*.

1

(hereinafter, "MWPCL"), and in support thereof, states as follows:

## INTRODUCTION AND BACKGROUND

Defendant provides personalized wellness services for private employers. This includes outcome-based health solutions designed to engage employees in the management of their health. This is completed through various forms of health screenings that are focused on early detection and the identification of risk factors.

Defendant hired Plaintiff to work as a Human Resources Coordinator. Plaintiff's duties centered on data entry, which was specific to processing new hire paperwork and inputting payroll information. Plaintiff's workload consistently required that she work in excess of forty (40) hours each week. Due to understaffing, it was typical for Plaintiff to work overtime regularly. However, Defendant failed to compensate Plaintiff for the overtime hours she worked.

Defendant completed these illegal acts by paying Plaintiff a salary. However, this per se salary was a mere facade; Plaintiff's duties did not exempt her from the overtime requirements under the FLSA or MWHL. Defendant willfully misclassified Plaintiff as a salaried employee for the sole purpose of not paying overtime compensation. Through this unlawful act, Defendant intentionally evaded the payment of wages owed to Plaintiff.

## THE PARTIES

1.   Plaintiff Jacqueline W. Ferguson (hereinafter, "Ferguson and/or Plaintiff") is an adult resident of Baltimore County, Maryland.

2.   Defendant Interactive Health Solutions, Inc. (hereinafter, "Interactive and/or Defendant") is an incorporated for profit business that provides wellness services to private employers. Interactive is located in Schaumburg, Illinois, where it maintains its

principal office. Interactive also maintains an office in Owings Mills, Maryland.[1]

3. Defendant is subject to the FLSA, MWHL and the MWPCL due to the amount in revenues generated; Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

4. At all times relevant to this Complaint, Plaintiff engaged in interstate commerce by the nature of the duties she performed as part of her employment with Defendant.

5. Plaintiff worked for Defendant, who, at all times throughout Plaintiff's employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b) and MWPCL, § 3-501(b).

6. Plaintiff worked as a salaried employee for Defendant. At all times relevant, Defendant made all decisions relating to Plaintiff's method of pay.

7. From May 1, 2007 until March 20, 2015, Plaintiff Ferguson was employed with Defendant and held the title of Human Resources Coordinator.

8. At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including Plaintiff's schedule.

9. Defendant possessed and exercised authority to determine the hours worked by Plaintiff.

10. Defendant had the authority to control Plaintiff's tasks.

11. Defendant had the power and authority to change the course of Plaintiff's duties.

---

[1] On March 6, 2014, it was announced that the company formerly known as Interactive Health acquired Health Solutions, Inc. and Health Solution Services, Inc. Pursuant to the Illinois Department of Business Services, Interactive Health is now registered under the corporate name Interactive Health Solutions, Inc.

12. Plaintiff recognized Defendant's authority and obeyed Defendant's instructions.

**JURISDICTION AND VENUE**

13. Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq.* This Court also has subject matter jurisdiction under 28 U.S.C. § 1331.

14. Pursuant to 28 U.S.C. § 1391 (b), venue is appropriate; the unlawful acts central to this matter occurred within the State of Maryland.

**FACTUAL ALLEGATIONS FOR ALL CLAIMS**

15. Defendant provides personalized wellness services for private employers. Defendant's business centers on program management and fitness goals. Defendant offers an array of wellness programs that are structured to assist its clients with strategic planning. This is completed through outcome-based health solutions designed to engage employees in the management of their wellbeing. Defendant provides a wealth of information to its clients in order for them to meet their health and fitness objectives.

16. To complete these objectives, Defendant provides flu shot services and related on-site programs. Defendant also offers various forms of health screenings that are focused on early detection and the identification of risk factors. If health risks are detected, Defendant is instrumental in developing personalized courses of action for its clients. Through routine personalized assessments, Defendant methodically seeks to proactively identify health concerns at an early stage.

17. Plaintiff had very little involvement with the wellness services described herein. Plaintiff was not required to engage in the planning, scheduling, or management of any programs related to the health and wellness of Defendant's clients.[2]

---

[2] In the eight years that Plaintiff was employed with Defendant, she was only required to assist with health

4

18. Plaintiff was hired solely to perform "day to day" office tasks. Her title was that of Human Resources Coordinator (hereinafter, "Coordinator"). As the Coordinator, Plaintiff was charged with processing documents in regards to new employees. This included verifying information specific to an employee's work history. This also entailed following strict procedures when substantiating a potential employee's qualifications.

19. During intermittent periods throughout her employment, this verification process necessitated that Plaintiff make various phone calls. These phone calls were for purposes of confirming biographical information specific to a candidate's viability. This was labeled as "phone screening," which was completed to eliminate candidates who didn't meet the needed criteria. This screening process required that Plaintiff follow a list provided by Defendant.

20. For example, a sizeable pool of these candidates consisted of nurses. As part of Plaintiff's duties, it was required that Plaintiff verify that these nurses possessed the required experience and education. To make this assessment, Plaintiff was required to follow strict protocols provided by management. These protocols were specific to a formula developed by Defendant.

21. Plaintiff had no discretion, nor any decision-making authority, in regards to which candidates were hired. Once the basic screening was completed, Plaintiff would forward the related documents (i.e. resumes) to management so that they could evaluate a candidate's qualifications. After her submission of the aforementioned documents, Plaintiff had no further input in reference to the persons that Defendant considered. Plaintiff's supervisors and managers made all decisions regarding new hires.

22. Once these officials made their decision, Plaintiff would receive an email from

---

screenings on approximately two (2) occasions. On these occasions, Plaintiff's tasks had to specifically conform to the protocols demanded by Defendant.

a supervisor regarding a new hire request. From there, Plaintiff was required to send information packets to these new employees. Defendant required that this be completed within a designated timeframe. Once sending was complete, Plaintiff also had to create and maintain folders for the new hires.

23. Plaintiff was also responsible for inputting work documents pertaining to all new hires. This required that Plaintiff log this information into Defendant's software.

24. In addition, Plaintiff was responsible for submitting information in regards to an employee's health benefits. This was specific to healthcare options offered by Defendant to its employees. On occasion, Plaintiff was charged with answering questions posed by new employees in relation to these healthcare plans. This was primarily completed by means of electronic correspondence. Plaintiff's answers always conformed to the guidelines that were specific to Defendant's benefit plans.

25. Plaintiff was also responsible for processing payroll information. This mostly involved simply organizing and submitting employee timesheets. This primarily entailed data entry, in which Plaintiff was responsible for entering time records into Defendant's software. This in turn would result in checks being printed.

26. In order to complete this task, Plaintiff again had to follow a specific formula. This formula was always in the form of a checklist. Defendant demanded that Plaintiff's duties conform to what was delineated on the checklist.

27. When Plaintiff's employment began, Paychex was the software used to complete her pay-roll tasks. After some time, Defendant switched vendors and used Automatic Data Processing ("ADP"). Regardless of what system was in place, Plaintiff's tasks were always routine; she was only required to use Defendant's software to input data. This was all that was needed in order for a check to be printed.

28.     On occasions that required that a check be issued manually, Plaintiff generally followed the same procedures.  However, it was also required that Plaintiff print the information that she entered and submit that information to the Accounting Department. Once submitted, Plaintiff's duties were complete.  Members from the Accounting Department were charged with printing the actual check.

29.     Plaintiff was also required to perform other routine tasks.  This included filing, answering the phone, faxing and making copies.

30.     Plaintiff satisfied the requirements of her position and adequately performed what was demanded by Defendant.

31.     For the duration of her employment, Plaintiff performed no analysis.

32.     Plaintiff did not interpret any information.

33.     Plaintiff did not write any reports.

34.     Plaintiff made no recommendations.

35.     Plaintiff retained no managerial responsibilities.

36.     Plaintiff did not supervise any employees.

37.     Plaintiff did not have the authority to hire or fire other employees.

38.     Plaintiff had no decision-making authority.

39.     Plaintiff had no discretion in performing any of her assigned tasks.

40.     For the aforementioned work, from approximately October 22, 2012 until December 6, 2013, Plaintiff received an annual salary of fifty-four thousand five hundred and one dollars and eighty-four cents ($54,501.84).  This sum was paid in the form of semi-monthly payments.

41.     Plaintiff subsequently received a raise and from approximately December 6, 2013 until July 7, 2014, Plaintiff received a salary of fifty-six thousand one hundred and

thirty-six dollars and ninety-six cents ($56,136.96). Plaintiff received semi-monthly payments for this sum as well.

42. Following this, Plaintiff received another raise and from approximately July 7, 2014 until the time that her employment ended, Plaintiff received an annual salary that did not exceed fifty-seven thousand eight hundred and twenty-four dollars ($57,824.00). Again, Plaintiff was paid this sum semi-monthly.

43. Upon the commencement of her employment, Defendant informed Plaintiff that she was to work forty (40) hours a week, five (5) days a week. For the duration of her employment, Plaintiff's schedule was to be from 8:30 a.m. to 5:00 p.m., Monday through Friday. This schedule was specific to what Defendant described as "core business hours." However, the hours that Plaintiff actually worked were far in excess.

44. Defendant promoted an employment environment that ensured that Plaintiff would be present at work for at least the timeframe described above. Due to the employment environment created by Defendant, it was frowned upon for employees to arrive at work anytime later than 8:30 a.m., or to leave work prior to 5:00 p.m. Moreover, Plaintiff was never allowed to leave at a time earlier than 5:00 p.m. without first getting express permission.

45. In actuality, the culture created by Defendant necessitated that Plaintiff work overtime consistently. Consequently, during many pay periods, Plaintiff worked well over forty (40) hours in a workweek. In fact, for the majority of her employment, Plaintiff consistently worked as many as fifty (50) to sixty (60) hours per week.

46. Due to the heavy workload imposed on Plaintiff, she would consistently arrive to work well in advance of 8:30 a.m. Plaintiff's heavy workload also required that she work past 5:00 p.m.

47. Due to the demands of her employment, Plaintiff could not complete all of her assigned tasks during her scheduled shifts. These circumstances required that Plaintiff regularly arrive early to work. Plaintiff typically arrived to work anywhere between 7:00 a.m. and 7:30 a.m.

48. Plaintiff's workload also regularly required that she stay at work until 5:30 p.m. There were occasions when Plaintiff was required to work even later. Plaintiff can recall many times in which she did not leave work until anywhere between 6:30 p.m. and 7:00 p.m.

49. Defendant was well aware of these overtime hours worked by Plaintiff. However, Defendant failed altogether to compensate Plaintiff for working these additional hours.

50. Plaintiff's schedule was also supposed to include a thirty (30) minute break for lunch. However, Defendant was aware that the responsibilities of her employment regularly required Plaintiff to work straight through her lunch period. Defendant failed to compensate Plaintiff for the time she spent working through her lunch breaks.

51. As a result, it was common for Plaintiff to work straight through her scheduled shifts without the receipt of any break. Defendant was also well aware of these conditions.

52. There were many circumstances that resulted in Plaintiff having to work through her supposed breaks. These same circumstances also caused Plaintiff to work overtime consistently. This was primarily the result of understaffing.

53. For instance, in the Fall, also known as the "flu season," in order to serve its clients, Defendant was in need of additional employees. This was primarily due to the number of flu and health screenings scheduled during this season. As a result, it was

required that Defendant hire numerous other employees during this period. These employees primarily consisted of PRN health screeners, in addition to flu nurses.

54. As previously noted, one of Plaintiff's primary duties consisted of processing paperwork for new hires. As a result, during the busy season, the processing of paperwork for new hires resulted in Plaintiff having to work overtime even more frequently than usual.

55. During the non-flu season, there were typically about four hundred (400) health screeners and nurses employed by Defendant in a given pay-period. During the busy flu season, this number increased to as many as eight hundred and thirty five (835). The influx of these employees during this season had a direct impact on the overtime hours worked by Plaintiff. Defendant was well aware that Plaintiff's workload increased immensely during this season.

56. Although Defendant ensured that there were enough health screeners and nurses hired during the busy season, Defendant was unconcerned with staffing additional employees in the Human Resources Department for purposes of assisting Plaintiff. Due to these circumstances, it was common for Plaintiff to work excessive overtime.[3]

57. Regardless of how many hours were worked, Plaintiff was only paid her regular salary. Defendant paid Plaintiff a salary in order to evade both Federal and Maryland wage laws.

58. There is no bona fide dispute that Plaintiff is owed overtime wages for hours worked over forty (40) in a workweek. At no time did Plaintiff's duties include work that would make her exempt from the FLSA and MWHL provisions requiring that she be paid overtime wages.

---

[3] During these periods, it was occasionally required that Plaintiff complete work from home. This was specific to when there were delays in processing payroll.

59. Defendant was well aware of the overtime hours worked by Plaintiff. Agents of Defendant Carrie Greene, Michelle Reichart, Jim Karpoff and Kim Young can attest to these conditions.

60. Defendant's agents were actively engaged in the management and direction of Plaintiff.

61. Defendant's agents were regularly present in Plaintiff's work area.

62. Defendant's agents controlled and supervised the work performed by Plaintiff.

63. Defendant's agents suffered or permitted Plaintiff to work more than forty (40) hours per workweek.

64. Upon information and belief, Alma Navarro (hereinafter, "Navarro"), one of Defendant's current employees, has a similar position to Plaintiff. Navarro is staffed at Defendant's Chicago office. Navarro's title is that of Human Resources Generalist. Navarro is responsible for performing the same duties that were assigned to the Coordinator. However, Navarro is assigned even additional tasks, resulting in her duties to exceed those that were charged to Plaintiff.

65. Although Navarro performed the same tasks as Plaintiff and was even responsible for performing additional tasks, Navarro is paid on an hourly basis. These circumstances further support the fact that Plaintiff was misclassified.

66. Moreover, subsequent to when Plaintiff's employment ended, Defendant eliminated the Coordinator position. Immediately following, due to the heavy workload associated with Plaintiff's former position, Defendant re-structured its Human Resources Department in Maryland. This entailed splitting all of the duties that were assigned to Plaintiff between three (3) different employees. This was because it was impossible for one (1) person to perform all of the tasks that were assigned to Plaintiff. This fact

provides further insight as to Plaintiff's former workload. Plaintiff's workload required her to work overtime consistently.

67. Furthermore, in regard to the employees that are now charged to perform Plaintiff's former tasks, upon information and belief, the majority of these employees are paid on an hourly basis. Even with this, Defendant failed to retroactively compensate Plaintiff for the overtime payments she is owed.

68. In bad faith, Defendant withheld the overtime wages owed to Plaintiff. This occurred well past Plaintiff's final day of employment.

69. Thus, Plaintiff seeks the wages that she is owed and other available relief through this Complaint.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### Count I.  Violation of the FLSA: Failure to Pay Overtime Wages

70. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

71. Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

72. As described above, Plaintiff has not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendant failed to compensate Plaintiff for these additional hours.

73. Defendant willfully and intentionally failed to compensate Plaintiff for the overtime wages she was owed. There is no bona fide dispute that Plaintiff is owed

overtime wages for work performed for Defendant.

74.     Under the FLSA, Plaintiff is entitled to additional wages from Defendant to compensate her for hours worked in a workweek in excess of forty (40) at a rate of one and one- half (1.5) times Plaintiff's regular hourly wage rate.

### *Count II. Violation of MWHL: Failure to Pay Overtime Wages*

75.     Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

76.     Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate; furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

77.     Plaintiff has not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

78.     Defendant willfully and intentionally did not compensate Plaintiff for the overtime wages she was owed. There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

79.     Under MWHL, Plaintiff is entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

### *Count III. Violation of the MWCPL: Failure to Pay Wages Owed*

80.     Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

81.     Plaintiff is entitled to wages under the Maryland Wage Payment Collection Law, Labor and Employment §§3-501 *et. seq.*, which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

82.     In accordance with §3-505(a), Plaintiff has not received compensation from Defendant for all wages owed for work performed before the termination of her employment.

83.     Defendant willfully and intentionally did not compensate Plaintiff for the wages owed to her and continued to violate the MWPCL, even after Plaintiff informed Defendant of the violation.

84.     Under the MWPCL, there is no bona fide dispute that Plaintiff is owed wages for work performed while employed by Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a)   Judgment against Defendant for its failure to pay Plaintiff in accordance with the standards set forth by the FLSA;

b)   Judgment against Defendant for its failure to pay Plaintiff in accordance with the standards set forth by MWHL;

c)   Judgment against Defendant for its failure to pay Plaintiff in accordance with the standards set forth by the MWPCL;

d)   An award against Defendant for the amount of unpaid overtime wages owed, calculated at a rate that is not less than one and a half (1.5) times Plaintiff's regular hourly rate for all overtime hours worked, to Plaintiff;

e)   An award of liquidated damages equal to the total amounts of unpaid wages owed to Plaintiff;

f)   An award of treble damages equal to the total amounts of unpaid wages owed to Plaintiff;

g) An award of reasonable attorneys' fees and all costs, plus interest, to be satisfied in full by Defendant; and

h) All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of her peers hear and decide all claims.

Respectfully submitted,

_____/s/_____
Benjamin L. Davis, III, Esq. (29774)
bdavis@nicholllaw.com
James A. Lanier (13789)
jlanier@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiff*